BECKI D. GRAHAM, CA Bar No. 238010
becki.graham@ogletreedeakins.com
SUSAN T. YE, CA Bar No. 281497
susan.ye@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:    415.442.4870

Attorneys for Defendant
XPO Logistics, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN KRAMER on behalf of himself, all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LOGISTICS, INC.; and DOES 1 - 100,<br><br>Defendants. | Case No.<br><br>**DEFENDANT XPO LOGISTICS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. § 1332, 1441, 1446, AND 1453**<br><br>[Alameda County Superior Court Case No. RG16832156]<br><br>Action Filed:    September 22, 2016<br>Trial Date:      None Set<br>Date Removed:   December 8, 2016 |

Case No. _____

DEFENDANT XPO LOGISTICS, INC.'S NOTICE OF REMOVAL

**TO THE CLERK OF THE UNTIED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that XPO Logistics, Inc. ("XPO"), the named defendant in the above-titled action, hereby moves this matter to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The grounds for removal are as follows:

## THE PUTATIVE CLASS ACTION

1. Kevin Kramer, on behalf of himself, all others similarly situated, and on behalf of the general public, filed a complaint against XPO[1] and Does 1 through 100 on September 22, 2016 in the Superior Court of the State of California for the County of Alameda, Case No. RG16832156 ("*Kramer*" or "Complaint").

2. Copies of all process, pleadings, papers and orders filed in the Superior Court of the State of California for the County of Alameda are attached as Exhibit A. A copy of XPO's Answer and Affirmative Defenses, filed on December 7, 2016, is attached as Exhibit B.

3. The plaintiff alleges that he and the other putative class members worked for XPO as "truck workers, industrial truck workers, industrial truck drivers, industrial vehicle drivers, industrial workers, and/or similar job designations." Exh. A. (*Kramer* Compl. ¶ 50).

4. The plaintiff asserts the following causes of action against XPO: (1) Failure to Pay All Straight Time Wages; (2) Failure to Pay Overtime; (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512); (4) Failure to Authorize and Permit Rest Periods (Cal. Lab. Code § 226.7; IWC Wage Order Nos. 9-1998, 9-2000, 9-2001(12); Cal. Code Regs. Title 8 § 11090); (5) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statements Provisions (Cal. Lab. Code §§ 226); (6) Failure to Pay All Wages Due at the Time of Termination of Employment (Cal. Lab. Code §§ 201-203); (7) Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*). *See generally* Exh. A.

---

[1] Like the plaintiffs in *Carter, et al. v. XPO Logistics, Inc.*, No. 3:16-cv-01231-WHO ("*Carter*"), and *Garcia, et al. v. Macy's West Stores, Inc., Joseph Eletto Transfer, Inc., XPO Logistics, LLC, and Does 1 through 25, Inclusive*, No. 3:16-cv-04440-WHO ("*Garcia*"), Kramer erroneously sued an "XPO Logistics" entity. The proper defendant in all three cases is XPO Last Mile ("XPO LM").

# RELEVANT BACKGROUND

## I. XPO LM's Business

5. Although the plaintiff sued XPO in this action, the proper defendant is XPO LM—a subsidiary of XPO. XPO LM is a third-party logistics company that operates as an authorized freight forwarder for its clients, such as retailers and distributors of furniture, appliances, large electronics, and building supplies. In this capacity, XPO enters into delivery service agreements ("DSAs") with independent contractors (otherwise known as independent motor carriers), which in turn provide last mile delivery services. A "last mile delivery" involves moving goods from a transportation hub to a final destination, such as a consumer's home. As a freight forwarder, XPO does not employ any of the motor carriers who provide last mile deliveries and instead serves exclusively as an expert on the applicable logistics network.

6. The independent motor carriers with whom XPO LM contracts range from single-vehicle sole proprietorships to corporations with multiple vehicles, employees, and sub-contractors who provide delivery services to XPO LM and its competitors. Some of the owners drive a truck that they lease or own and employ a single helper; others drive a truck and own or lease an additional truck or two that they operate with the assistance of other employees or independent contractors; others still manage a fleet of trucks and employ numerous people. Many of the independent motor carriers with whom XPO LM contracts thus hire employees or contract with additional independent contractors in order to operate their businesses.

## II. The *Carter* and *Garcia* Putative Class Actions

7. In addition to the *Kramer* action, there are two other pending putative class actions before this Court against XPO (erroneously named as a defendant instead of XPO LM in each) that involve purported wage and hour violations by truck drivers who provided delivery services in California. *Carter, et al. v. XPO Logistics, Inc.*, No. 3:16-cv-01231-WHO ("*Carter*"), and *Garcia, et al. v. Macy's West Stores, Inc., Joseph Eletto Transfer, Inc., XPO Logistics, LLC, and Does 1 through 25, Inclusive*, No. 3:16-cv-04440-WHO ("*Garcia*"). This Court previously related those two actions. *See* Declaration of Susan T. Ye, dated December 8, 2016 ("Ye Decl."), ¶ 4, Exh. B (Sept. 9, 2016 Order).

8.     The *Carter* plaintiffs filed their action on March 11, 2016 in this Court, alleging that XPO LM misclassified independent contractors and thus violated California's wage and hour laws and the Fair Labor Standards Act.  *See* Ye Decl., ¶ 5, Exh. C (*Carter* Compl., *Carter* ECF No. 1; *Carter* First Am. Compl., *Carter* ECF No. 33 ("*Carter* FAC")).  *Carter* involves a statewide putative class of independent motor carriers who contracted with XPO LM to perform delivery services.  The *Carter* plaintiffs made an initial demand of $75,000,000 and thus set that number as the amount in controversy in the *Carter* action.  *See* Ye Decl., ¶ 6, Exh. D (*Carter* Dkt., Demand).

9.     On July 1, 2016, the *Garcia* plaintiffs filed their complaint in the Superior Court of California for the County of Alameda, and those plaintiffs alleged similar California wage and hour violations as the *Carter* plaintiffs.  *See* Ye Decl., ¶ 7, Exh. E (*Garcia* Compl., *Garcia* ECF No. 1-1).  *Garcia* involves a putative class of "drivers" and "helpers" who provided services at one location in California and worked for some of the independent motor carriers who make up the *Carter* putative class.  *See* Ye Decl., ¶ 7, Exh. E (*Garcia* Compl. ¶ 1, 6-10, 31, *Garcia* ECF No. 1-1).[2]  That is, XPO LM contracts with the independent businesses that are operated by members of the *Carter* putative class, and the *Carter* putative class members in turn hire the "driver" and "helper" putative class members in *Garcia*.

10.    On August 5, 2016, using competent evidentiary support, XPO LM removed the *Garcia* action to this Court pursuant to the Class Action Fairness Act ("CAFA").  *See* Ye Decl., ¶ 8, Exh. F (*Garcia* Notice of Removal, ECF No. 1).  Neither the *Garcia* plaintiffs nor this Court challenged XPO LM's evidence and ultimate conclusion that the *Garcia* action meets CAFA's jurisdictional requirements.

**III.   The *Kramer* Putative Class Action**

11.    According to a website posted by Kramer's counsel, the *Kramer* putative class includes "all California XPO Logistics Drivers."  Ye Decl., ¶ 3, Exh. A.  As XPO LM indicated to the Court during the September 28, 2016 conference for the *Carter* and *Garcia* actions, the precise contours of the *Kramer* putative class are unclear from the face of the complaint—it may include a statewide putative class of "drivers" and "helpers" (as opposed to only the "drivers" and "helpers"

---

[2] XPO LM has numerous locations throughout California.

at one location who make up the putative class in *Garcia*), or it may include a statewide putative class of "drivers" and "helpers" plus the *Carter* putative class.  But when the complaint is read in conjunction with the website posted by Kramer's counsel, a reasonable reading of the *Kramer* class definition is that the plaintiff seeks to represent members of both the *Carter* and *Garcia* putative classes—*i.e.*, his class definition includes "industrial truck drivers" who are motor carriers who personally drove a truck (like the *Carter* plaintiffs) and secondary "drivers" who were hired by or contract with motor carriers (like some of the *Garcia* plaintiffs).  *See* Exh. A (*Kramer* Compl. ¶ 50).

## VENUE, TIMELINESS, AND CONSENT

12.     Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1441(a) because the Northern District of California includes the Superior Court of California for the County of Alameda.

13.     The plaintiff has not served XPO with the Complaint.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within thirty (30) service.  28 U.S.C. § 1446(b) (emphasis added).

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

14.     This Court has original jurisdiction over this case because it is a putative class action in which the proposed class has more than 100 members, the amount in controversy exceeds $5 million, and there is minimal diversity.  28 U.S.C. § 1332(b), (d); *see also Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

**IV.    There Is Diversity Of Citizenship**

15.     The minimal diversity requirement of CAFA, 28 U.S.C. § 1453(d)(2)(A), is satisfied whenever at least one plaintiff and one defendant are citizens of different states.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a); *see, e.g.*, *Rodgers v. Central Locating Serv., Ltd.*, 412 F. Supp. 2d 1171, 1174-79 (W.D. Wa. 2006).

16.     The plaintiff alleges that he is and was a resident of California at all relevant times.  Exh. A (*Kramer* Compl.¶ 36).  For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

17. XPO was, at the time of the filing of the state court action, and remains, a Delaware corporation with its principal place of business in Greenwich, Connecticut. Declaration of Danny Hansen, dated December 8, 2016 ("Hansen Decl."), ¶ 3; *see Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where the corporation's officers direct, control and coordinate the corporation's activities."). XPO was erroneously sued in this case, and XPO LM, the proper defendant, is incorporated in Georgia with its principal place of business in Marietta, Georgia. Hansen Decl., ¶ 4.

18. Diversity is thus established because the plaintiff is a citizen of California and the defendant is a not a citizen of California.

## V. The Proposed Class Exceeds 100 Members

19. XPO LM's business records indicate that the plaintiff's proposed class exceeds 100 members.

20. More than 100 different individuals worked as "drivers" or "helpers" for motor carriers who contracted with XPO LM during the putative class period. Hansen Decl., ¶ 6. Indeed, more than 100 different individuals worked as "drivers" or "helpers" for motor carriers at one XPO LM profit center in California during that time, and XPO LM has numerous profit centers in California. Ye Decl., ¶ 9, Exh. G (Declaration of Tony Torres in support of *Garcia* Notice of Removal, ¶ 7); Ye Decl., ¶ 10, Exh. H (Declaration of Tony Torres in support of Defendant's Opposition to Conditional Certification, ¶ 4).

21. The *Carter* putative class also includes more than 100 individuals. *See* Ye Decl., ¶ 5, Exh. C (*Carter* First Amended Complaint, ¶ 45(a)).

## VI. The Amount in Controversy Exceeds $5 Million

22. Although XPO denies that it is liable to the plaintiff or the proposed class members, the amount in controversy exceeds $5,000,000.

23. In determining the amount in controversy for CAFA purposes, all potential damages based on the claims in the complaint, as well as attorneys' fees, are considered. *Guglielmino*, 506 F.3d at 701 (unspecified attorneys' fees are appropriately counted toward the amount in controversy in CAFA removal actions); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC,

2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *3 (E.D. Cal., May 1, 2007) (slip copy) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint.").

24. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members." *Rodriguez*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, (2013)).[3]

A. **The Amount in Controversy**

25. The *Kramer* putative class includes all drivers and helpers who operated trucks in California. *See* Ye Decl., ¶ 3, Exh. A; *see also* Exh. A (*Kramer* Compl. ¶ 50 (including "truck drivers" and "truck workers" in the class definition)). The *Carter* plaintiffs—who claim to be individuals who personally drove a truck in California and thus are included among "all drivers"—claim that the amount in controversy is $75,000,000. *See* Ye Decl., ¶ 6, Exh. D (*Carter* Dkt., Demand). That, respectfully, ought to end the amount in controversy analysis because if the *Carter* plaintiffs' amount in controversy exceeds $5,000,000, so too does the amount in controversy of the larger *Kramer* putative class that includes members of the *Carter* putative class.

26. In addition to the $75,000,000 demanded by the *Carter* putative class, the amount in controversy also exceeds CAFA's jurisdictional requirement based on only the overtime claims for a subset of the *Kramer* putative class. More specifically, the overtime claim for the "helpers" alone exceeds CAFA's jurisdictional requirement.

---

[3] Declarations constitute sufficient evidence to meet XPO's burden. *See, e.g.*, *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2, 5 (E.D. Cal., May 1, 2007) (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N.D. Cal. Mar. 1, 2012) (there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

27.     Liability Period.  The plaintiff asserts claims from "at least four years prior to the filing of this action to the present."  Exh. A (*Kramer* Compl. ¶¶ 16-22).  For purposes of this notice of removal, XPO uses the conservative assumption of September 22, 2016—the date on which the *Kramer* Complaint was filed—as the end of the liability period.  The statute of limitations for the overtime claims is four years because the plaintiff's allegations under the Unfair Competition Law authorize recovery of restitution for unpaid wages for a four-year period.  Cal. Civ. Pro. Code § 338; Cal. Bus. & Prof. Code § 17208.

28.     Pay Rate.  XPO uses the California minimum wage during the liability period.  That wage is (a) $8.00/hour from the beginning of the liability period through June 30, 2014; (b) $9.00/hour from July 1, 2014 through December 31, 2015; and (c) $10.00/hour from January 1, 2016 through September 22, 2016.

29.     Helpers.  From on or about September 22, 2012 to September 22, 2016, on average, more than 100 "helpers" were tendered loads in California each day.  Hansen Decl., ¶¶ 6-7.

**1.     Kramer's Overtime Claims**

30.     The plaintiff in *Kramer* alleges that "Defendant and/or DOES salary pay structure failed to pay said Non-Exempt workers for all time worked over eight (8) hours a day and/or over forty (40) hours a week."  Exh. A (*Kramer* Compl. ¶ 115; *see also id.* at ¶¶ 117-20).

31.     Members of the *Kramer* putative class worked from five to seven days per week during the liability period, and those putative class members claim that they are entitled to approximately 35 hours of overtime pay per week (*i.e.*, 15 hours x 5 days = 75 hours per workweek).[4]

32.     Weekly Overtime Wages.

(a)     From September 22, 2012 through June 30, 2014, each driver and helper can recover up to **$420** for each week that he proves a violation (*i.e.*, $8 per hour x 35 hours of overtime per week x 1.5).

---

[4] The *Garcia* plaintiffs—who are part of the *Kramer* putative class—allege that they "typically worked 12 to 15 hours a day."  *See* Ye Decl., ¶ 7, Exh. E (*Garcia* Compl., ¶ 23).  As it did when it removed the *Garcia* case, XPO uses the more conservative estimate of five working days per week for its calculations.  Using six days per week in its calculations would yield a total of 50 overtime hours per week.  Using seven days per week yields 65 overtime hours per week.

(b)  From July 1, 2014 through December 31, 2015, each driver and helper can recover up to **$472.50** for each week that he proves a violation (*i.e.*, $9 per hour x 35 hours of overtime per week x 1.5).

(c)  From January 1, 2016 through September 22, 2016, each driver and helper can recover up to **$525** for each week that he proves a violation (*i.e.*, $10 per hour x 35 hours of overtime per week x 1.5).

33.  <u>Overtime Claim</u>.  The overtime damages sought by helpers in the *Kramer* putative class who worked in California from September 22, 2012 to September 22, 2016 exceeds $9,492,000.  This value was calculated by adding together the sums obtained by multiplying the number of workweeks by 100 helpers working per week by the applicable weekly recovery (which varies based on the applicable minimum wage).

### 2.  Attorneys' Fees

34.  Courts include attorneys' fees when calculating the amount in controversy.  *See, e.g.*, *Goldberg v. C.P.C. Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982); *Guglielmino*, 506 F.3d at 701 (unspecified attorneys' fees are appropriately counted toward the amount in controversy in CAFA removal actions); *Sanchez v. Wal-Mart Stores, Inc.*, No. Civ. S-06-cv-2573 DFL KJM, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (even if a more conservative estimate of compensatory damages totaling less than $5 million was appropriate, the addition of alleged attorneys' fees should be included in determining the amount in controversy).

35.  Kramer seeks to recover attorneys' fees.  *See* Exh. A (*Kramer* Compl., Prayer, ¶ 17). Kramer's attorneys' fees are estimated to be 25 percent of the total recovery.  *See Muniz*, 2007 WL 1302504, at *4 n.8 ("in California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement").

36.  Taking into account attorneys' fees, the amount in controversy for the helpers' overtime claim exceeds **$11,865,000** (1.25 x $9,492,000).

37.  Significantly, this amount in controversy calculation does not include all of the claims asserted in *Kramer*, including failure to pay straight time, failure to provide meal and rest

1  periods, wage statement violations, and waiting time penalties.  Nor does the amount in
2  controversy include all of the overtime claims of all of the putative class members, since the
3  calculations only focus on 100 helpers working at a given time and it does not include drivers.[5]

4                                                             * * * * *

5       38.   *Kramer*'s amount in controversy exceeds CAFA's $5 million jurisdictional
6  minimum because (1) the *Kramer* putative class includes the putative class in *Carter*, in which the
7  amount in controversy is $75 million; and (2) the amount in controversy of the overtime claims and
8  attorneys' fees for a subset of the *Kramer* putative class exceeds $11,865,000.

9              **NOTICE TO THE PLAINTIFF AND ALAMEDA COUNTY SUPERIOR COURT**

10      39.   As required by 28 U.S.C. § 1446(d), a copy of the original notice of removal will be
11  served on the plaintiff's counsel of record, The Turley Law Firm, APLC, 7428 Trade Street, San
12  Diego, California 92121.  In addition, a copy of this notice of removal will be filed with the Clerk
13  of the Court for the Superior Court of the County of Alameda.  A true and correct copy of the
14  Notice to Adverse Parties of Removal of Action to the United States District Court by XPO, to be
15  filed in the Superior Court of the County of Alameda, without the exhibits, is attached hereto as
16  Exhibit C.

17      40.   The undersigned counsel for XPO has read the foregoing and signs the Notice of
18  Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by U.S.C. §
19  1446(a).

20

21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27

28  ---
[5] To the extent XPO LM's calculations are challenged, it expressly reserves the right to calculate the amount in controversy based on all of the claims asserted by all of the putative class members.

9                                                                 Case No. _____
DEFENDANT XPO LOGISTICS, INC.'S NOTICE OF REMOVAL

**NO WAIVER**

41.  By filing this Notice of Removal, XPO does not waive any defenses available to it.

WHEREFORE, XPO Logistics, Inc. respectfully removes this case to this Court.

DATED: December 8, 2016

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Becki D. Graham*
Becki D. Graham

Attorneys for Defendant,
XPO Logistics, Inc.